528 A.2d 282

The Beaver Cemetery and James I. Wallover, Petitioners *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued March 23, 1987, before Judges Craig and Doyle, and Senior Judge Narick, sitting as a panel of three.

*Robert X. Medonis,* for petitioners.

*William R. Fewell, Jr.,* Assistant General Counsel, with him, *Elisabeth S. Shuster,* General Counsel, for respondent.

OPINION BY SENIOR JUDGE NARICK, June 30, 1987:

The Beaver Cemetery (Cemetery) has appealed from the decision and order of the Pennsylvania Human Relations Commission (Commission) which adopted the recommendation of the Hearing Examiner who found that the Cemetery had discriminated against Kathryn Berardi (Berardi) on the basis of her sex by demoting her from the position of manager and replacing her with a male, in violation of Section 5(a) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955.

We must decide three issues: whether the complaint should have been dismissed on the grounds of laches, whether the Hearing Examiner committed an error of law in her allocation of the burden of proof and whether her findings are supported by substantial evidence.

The Cemetery is a non-profit, non-sectarian cemetery located in Beaver, Pennsylvania. It is directed by a Board of Managers, which appoints a manager to handle the day-to-day operations.

In 1968, the Board appointed Mr. Albaugh as manager. Berardi had been Albaugh's secretary at his previous position, and she accepted his offer to become the Cemetery's secretary. She served in this capacity from 1968 until Albaugh's death in 1970.

From 1970 to 1973, the Board of Managers took no action to replace Albaugh. His tasks were assumed by

Berardi, however, and in 1973, the Board officially appointed her as manager, and increased her salary. In October of 1977, Berardi was replaced by Mr. Cornell as manager of the Cemetery. Although her salary was not decreased, Cornell's salary was higher.

Berardi filed a complaint with the Pennsylvania Human Relations Commission on November 17, 1977. Hearings were held in June 1985 before a Hearing Examiner, who determined that there was a violation of the Act. The Hearing Examiner's findings were adopted by the Commission, which entered its final order on March 26, 1986. It is from that order which the Cemetery has appealed.

First, the Cemetery contends that Berardi's complaint should have been dismissed on the grounds of the equitable doctrine of laches. The complaint was filed in November of 1977 and not heard until June 1985. In the interim, one of the Cemetery's witnesses, Mr. Prothero, died. The Cemetery argues that the loss of this testimony was prejudicial to its case, and that the Commission ignored the evidence it presented in the form of a letter written by Prothero.

Initially, we note that it is unsettled whether the doctrine of laches may be applied in this type of administrative proceeding.[1] While similar arguments have been considered by this Court in some cases, *see, e.g., Farrell Area School District v. Deiger,* 88 Pa. Commonwealth Ct. 431, 490 A.2d 474 (1985) (a human relations case under the Act), the applicability of the doctrine to these types of administrative actions has been questioned. *Churchill Area School District Appeal,* 30 Pa. Commonwealth Ct. 413, 374 A.2d 1000 (1977) (a case

---

[1] This court has held that the doctrine is applicable to administrative *disciplinary* actions. *See e.g., Harrington v. Department of State,* 58 Pa. Commonwealth Ct. 137, 427 A.2d 719 (1981).

arising under Section 1505 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.1505); *Department of Transportation v. Pennsylvania Human Relations Commission,* 84 Pa. Commonwealth Ct. 98, 480 A.2d 342 (1984) *rev'd on other grounds,* 510 Pa. 401, 508 A.2d 1187 (1986) (another case under the Act).

Given that the purpose of the doctrine is to bar relief "when 'the complaining party is guilty of want of due diligence in failing *to institute* his action to another's prejudice,' " *Leedom v. Thomas,* 473 Pa. 193, 200, 373 A.2d 1329, 1332 (1977) (citations omitted; emphasis added), and that, in assumpsit actions, statutes of limitations serve that purpose, *see Pennsylvania Railroad Co. v. Brownstein,* 182 Pa. Superior Ct. 65, 125 A.2d 618 (1956), it seems that a similar rationale ought to apply here, where the Act specifically provides that complaints must be filed within ninety days after the alleged act of discrimination. 43 P.S. §959(g). The Cemetery conceded that the complaint in this case was filed within the applicable time period, and has not raised timely filing as an issue before this Court. Rather, it contends that the eight years which elapsed between the filing of the complaint and the hearing is an unreasonable amount of time as a matter of law, and that it has been prejudiced by the inordinate delay. While we agree that an eight-year hiatus is deplorable, we do not believe that the delay is fairly attributable to Berardi. It would be inequitable under these facts to allow the invocation of an equitable doctrine against a complainant who has acted with all due diligence in filing within the relatively short limitations period. Under these circumstances, the complainant has as much to lose as the employer by reason of the delay, in terms of fading memories and loss of witnesses, both for direct and cross-examination purposes. Because this is not an equity case, and the Act contains a limitations period, eliminating

the need for a device to protect employers from stale claims, we feel it appropriate to decline to consider the defense of laches.

The Cemetery's next argument is that the Commission erred in its allocation of the parties' respective burdens of proof. Because we are of the opinion that the Commission followed the applicable legal precedent, we reject this argument.

Citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981); *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1973); *General Electric Corp. v. Pennsylvania Human Relations Commission,* 469 Pa. 291, 365 A.2d 649 (1976), the Commission outlined the respective burdens of proof as follows. First, the complainant bears the burden of making out a *prima facie* case. Secondly, should she do so, the employer generally must rebut the inference of discrimination thus created by setting forth, through the introduction of admissible evidence, the legitimate, nondiscriminatory reasons for its conduct. Finally, the complainant, in order to prevail, is then required to show by a preponderance of the evidence that the proffered reasons were pretextual and that she was, therefore, the victim of intentional discrimination. Under the cases cited, we find this to be a correct statement of the law, and one this Court has consistently followed, as we are bound to do. *See e.g., Smith v. B & O Railroad Co.,* 90 Pa. Commonwealth Ct. 186, 494 A.2d 1161 (1985); *Harrisburg School District v. Pennsylvania Human Relations Commission,* 77 Pa. Commonwealth Ct. 594, 466 A.2d 760 (1983); *Board of Trustees, Luzerne County Community College v. Pennsylvania Human Relations Commission,* 33 Pa. Commonwealth Ct. 121, 381 A.2d 201 (1977).

The Cemetery has not disputed, as found by the Commission, that Berardi fulfilled her initial burden of

establishing a *prima facie* case. The Commission determined that Berardi proved: 1) that she was a member of a protected class; 2) that she was performing duties which she was qualified to perform; 3) that she was removed from the manager's position; and 4) that the employer sought a replacement with similar qualifications or replaced her with an employee not in her protected class.

The next level of inquiry then became whether the Cemetery had a legitimate, non-discriminatory reason for replacing Berardi with Cornell. This included a showing that Berardi was not best qualified for the position. *Harrisburg School District.* While the Cemetery objects to imposition of this greater burden,[2] it is clear that the Pennsylvania Supreme Court has construed Section 5(a) of the Act[3] to include such a burden. *General Electric; Winn v. Trans World Airlines, Inc.,* 506 Pa. 138, 484 A.2d 392 (1984). That such a demonstration is required, however, does not mean, as the Ceme-

---

[2] We use the term "greater burden" as did the Commission, which compared an employer's burden under Section 5(a) of the Act with the "lesser burden" of *Burdine,* which does not require an employer to present evidence with respect to a complainant's qualifications. As this Court noted in *Harrisburg School District* at 599, 466 A.2d at 763, "the U.S. Supreme Court's construction of Title VII does not require our court to construe the Pennsylvania Human Relations Act in the same fashion," *citing Anderson v. Upper Bucks County Area Vocational Technical School,* 30 Pa. Commonwealth Ct. 103, 373 A.2d 126, 129 (1977).

[3] In pertinent part, that section provides:
It shall be an unlawful discriminatory practice, . . . (a) For any employer because of the . . . sex . . . of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.

tery seems to believe, that the Commission altered the Cemetery's ultimate burden, which is one of production of evidence. *General Electric; Winn; Harrisburg School District*. Once such evidence is presented, the burden again shifts to the complainant for an opportunity to demonstrate pretext. Of course, the ultimate burden of persuasion always rests with the complainant. *Id*.

A careful reading of the Commission's entire opinion indicates that it followed this procedure. It evaluated the evidence and found that the Cemetery had not demonstrated that Berardi was not the best able and most competent to serve as manager. Further, in light of Berardi's testimony, it found that the reasons the Cemetery offered for her demotion were pretexts. It based that conclusion on the following testimony: Mr. Wallover, a Board member and the Cemetery's prime witness, testified that Berardi did not adequately solve problems and that she complained to him of feeling "burdened" by the responsibilities of her job. However, he admitted that he had never taken any disciplinary action against her, believed, but was not sure, that either he or Mr. Prothero, another Board member, had discussed Berardi's deficiencies as manager with her, and that the Board had given Berardi a raise every year that the Board had a raise to give. Regarding the circumstances surrounding the appointment of Mr. Cornell as manager, Wallover testified that the Cemetery was run by employees and owners of the Cook-Anderson Company, many of whom served on the Board. Cornell was a Board member, a Cook-Anderson employee and a relative of Mr. Cook who Wallover described as Mr. Cook's "boy." Following Cook-Anderson's bankruptcy, he went to work for a hardware store but developed back problems which were aggravated by that job. Giving up the job would leave him and his wife with no visible means of support and the Commission found this to be a

motivating factor in appointing him as Cemetery manager. Further, the extent of his familiarity with Cemetery operations arose from attending four Board meetings a year, and from having been involved with supplying items the Cemetery ordered through Cook-Anderson. These admissions, coupled with Berardi's clear and more credible testimony to the effect that she derived satisfaction from her job, did not feel burdened by it, and had never received any complaints from the Board, led the Commission to conclude that her demotion amounted to impermissible sex discrimination.

The final argument raised by the Cemetery is that the Commission erred in rejecting certain evidence it offered to prove that its decision to demote Berardi was free of a discriminatory motive. Wallover described a situation in which he received frequent complaint calls at his home regarding matters he felt should have stopped at Berardi's desk. The Commission discounted this testimony in light of several factors. It found that no Board members had complained to Berardi that her performance of her duties as manager was less than acceptable during her tenure, and Berardi received regular salary increases. In addition, she did not receive the same level of support as previous and subsequent male managers, in that she did not have a full-time secretary as they did, but was expected to do both jobs. The Board undermined her authority with respect to problems with a difficult employee, Mr. Chevoits, yet clearly supported the authority of Cornell when similar problems recurred while he was manager. The Commission found further, that Cornell was offered the position of manager one year before he accepted it, and it was unlikely that the Board would have allowed the deteriorating situation Wallover described to continue for that long a time.

The Cemetery's argument overlooks the Hearing Examiner's role as factfinder. The Commission adopted the Hearing Examiner's opinion, after having determined that substantial competent evidence supported her findings. Our scope of review is similarly limited. We may not disturb an order of the Commission unless its adjudication is in violation of complainant's constitutional rights, is not in accordance with the law or if necessary findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Caterpillar Tractor Co. v. Pennsylvania Human Relations Commission,* 78 Pa. Commonwealth Ct. 86, 466 A.2d 1129 (1983). We have previously held that an administrative decision is supported by substantial evidence when, from an examination of an entire record and the inferences therefrom, a reasonable person might have reached the same decision. *Board of Trustees* at 125, 381 A.2d at 203.

From our thorough review of the entire record, we find that each of the Commission's detailed factual findings is amply supported by substantial, competent evidence. The Cemetery complains that certain evidence was disregarded by the Commission. However, the Commission expressly found that much of that evidence was not credible. It is solely within the province of the factfinder to determine the weight and credibility of the evidence and when, as here, its findings are supported by substantial evidence, we are without power to disturb those findings on appeal. *Caterpillar Tractor Co.*

Accordingly, having detected no error in the proceedings before the Commission, we affirm its order.

### ORDER

AND NOW, this 30th day of June, 1987, we affirm the order of the Pennsylvania Human Relations Commission dated March 26, 1986.